Filed 9/14/15  P. v. Spornhauer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061126 |
| v. | (Super.Ct.No. RIF1303592) |
| RAYMOND FREDERICK SPORNHAUER III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge. (Retired judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Reversed.

Richard V. Myers for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

The People charged defendant and appellant Raymond Frederick Spornhauer III with a single count of felony infliction of corporal injury causing traumatic condition on a cohabitant. (Pen. Code, § 273.5, subd. (a).)**1** The jury acquitted defendant of this crime but convicted him of misdemeanor simple battery on a cohabitant, a lesser included offense. (§ 243, subd. (e)(1).) The trial court sentenced defendant to 36 months of formal probation and 120 days of confinement; the latter to be served in an electronic monitoring program.

On appeal, defendant argues the trial court erred in refusing to give a self-defense instruction. He also accuses the prosecutor of committing prejudicial misconduct and his trial counsel of providing ineffective assistance. We agree with defendant that his attorney provided a prejudicially deficient performance when he failed to advocate for a self-defense instruction. Because we reverse on this ground and remand for further proceedings, we need not and do not discuss the rest of defendant's contentions.**2**

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and the victim began dating in approximately August 2012. In May 2013 they began cohabitating, but their relationship had been "on and off a lot" in the

---

**1** All further statutory references are to the Penal Code unless otherwise indicated.

**2** Defendant filed a petition for writ of habeas corpus, in which he argues his trial attorney rendered ineffective assistance of counsel (case No. E062046). We ordered the habeas corpus petition considered with this appeal. We will resolve that petition by separate order.

intervening months. Even after moving in together, defendant and the victim split up and got back together several times.

At trial, the People introduced evidence that defendant had pushed the victim in October 2012. The victim said she sustained a scrape to the back of one of her arms in the altercation. The victim did not report this incident to the police. The victim also testified at trial that defendant had pushed her to the ground at a hotel in June 2013. She received a cut by her right eye that left a scar when defendant "pushed [her] head to the ground."

The event underlying the case against defendant occurred on September 28, 2013. At trial, the victim testified as follows:

Defendant woke the victim at approximately 2:00 a.m. He was holding a laptop computer on which he had accessed the victim's deleted text messages. Defendant accused the victim of having sexual relations with someone else while they had been separated. While they were both still in the bedroom, defendant hit the victim with his hand. They then moved into the kitchen, where defendant was reading the text messages and demanding answers from the victim even though she did not want to talk about the alleged affair. Defendant hit the victim in the face with his hand multiple times in the kitchen. The victim just wanted defendant to talk to her. The argument moved outside the residence, back inside, and then outside again. During the final portion of the altercation, defendant insisted the victim read the text messages on his laptop. She refused, and he hit her in the head with the computer. Defendant then left. Because she was afraid, the victim retreated to the bushes surrounding a neighbor's yard and called

3

911.  She told the operator defendant had punched her "more than several times" and hit her with his laptop.

The victim claimed defendant caused redness and bruising to her face and scratches and scrapes on her legs and forearms.  She also had blood on her left pinky finger.

Riverside Police Officer Jarid Zuetel responded to the victim's call for emergency assistance.  Officer Zuetel recorded a statement from the victim, which was played to the jury at trial.  The victim told Officer Zuetel defendant woke her to ask about the suspected infidelity and struck her with both his hands and with his laptop computer.  At trial, the victim testified she had been honest with Officer Zuetel on the night of the incident.

Officer Zuetel drove the victim to her sister's residence, where she spent the night.  However, defendant and the victim "got back together that night" and recommenced residing in the same house together.

On October 5, 2013, Riverside Police Detective Kenneth Tutwiler called the victim as part of a follow-up investigation.  The victim was "very hesitant" to speak about the incident and said she and defendant were living together and attending counseling.  After this short conversation with the victim, Detective Tutwiler asked to speak to defendant.  The People presented an audio recording of defendant's telephonic statement to Detective Tutwiler as part of their case-in-chief.

In that interview, defendant admitted verbally quarreling with the victim over the suspected infidelity, but he denied hitting her.  According to defendant, the victim threw

4

his computer to the ground and broke it when he tried to show her the text messages on his computer. He told her to leave. When she refused, he said he would leave, instead. However, defendant asserted, the victim "was trying to physically stop" him from exiting. She tried to grab him as he was "forcefully walking [his] way out of the house." Defendant told Detective Tutwiler he pushed the victim with an open hand to get away. When asked about the injuries the victim reported, defendant indicated she told him she had received some of the bruises and scrapes from working on her car. He was suspicious an affair had occurred because the bruises the victim had looked like ones she sometimes sustained during sexual activity. When asked about injuries to the victim's face, defendant said, "When I left . . . she didn't have any marks on her face at all." He complained the victim had previously threatened to cause him to lose his job or otherwise severely impact his life by reporting him to the police. Defendant also told Detective Tutwiler the couple was pursuing counseling.

A defense investigator, Kathy Lestelle, interviewed the victim on November 21, 2013. At that time, defendant and the victim were a couple. The victim's intention in speaking to Lestelle was to see "if we could get [the case] dropped." She also loved defendant at that time and wanted their relationship to survive. The victim testified at trial that defendant never told her what to say to Lestelle.

Because she thought it would decrease her credibility, the victim told Lestelle she was drunk the night of the incident. However, at trial the victim testified this was a lie. The statement to Lestelle that the victim had been hurt emotionally, but not physically, was also a lie. Similarly, at trial the victim admitted she told Lestelle she may have

5

obtained the bruising when defendant pushed her away because he wanted to leave but she was holding his arms down. She also told Lestelle defendant never hit her, whether with the laptop or otherwise. According to the victim's trial testimony, these statements to Lestelle were lies.

On cross-examination, the victim denied trying to prevent defendant from leaving the house the night of the incident. She admitted to telling Lestelle she had previously harmed herself and then threatened to call the police and blame defendant. The victim never testified this statement was a lie.

Defendant did not testify at trial. He offered testimony from Gregory Havard, a friend and coworker. Havard had telephonic contact with the victim; he had never met her in person. The victim told him she had lied to the police about the events underlying defendant's prosecution. Havard did not know how many times the victim had spoken to law enforcement.

A.      *Opening and Closing Arguments*

The opening statement of the prosecutor (Matusik) noted the victim had told inconsistent versions of her story to the police and Lestelle but explained this was because she had been trying to preserve her relationship with defendant before their final breakup. Matusik also briefly described defendant's telephonic interview with Detective Tutwiler. According to Matusik's characterization, defendant "describe[d] the situation as if it was the victim who was push—she—he wanted to leave. She didn't want him to leave, so he pushed her." Matusik indicated this theory failed because the victim's injuries were not consistent with having been pushed.

6

In his opening statement, defense counsel (Comings) indicated defendant never hit the victim on the night in question. Comings described a scenario in which defendant was hurt and angry because he had discovered the text messages, so he demanded the victim leave. Instead, she followed him into a different room "to confront him." According to Comings, the victim wanted to talk, but defendant wanted to leave. The victim grabbed defendant to stop him from going, "And at some point when she's on him, he pushes her away to get away like a normal person would. He didn't swing. He doesn't punch her. He doesn't do anything like that. And he never once hit her with a computer."

In her closing argument, Matusik told the jury the slightest touching can constitute a battery. On the topic of simple battery, Matusik indicated, "it really doesn't take much to be guilty of this offense." She then said: "You heard the defendant's statement. . . . [T]here were several mentions of how he pushed her, how he shoved her. It's undisputed that he is guilty of this lesser offense." Although Matusik admitted the victim told Lestelle she may have gotten bruised by trying to stop defendant from leaving, she again argued, as she did in her opening statement, that the injuries did not match this explanation for what happened. Matusik then discussed defendant's statement to Detective Tutwiler and his claim that he had been trying to leave and pushed the victim to get away from her as she tried to grab him. Again, Matusik stated defendant had admitted he was guilty of simple battery: "The bottom line is, he admits in his interview that he pushed her, that he shoved her. He's definitely guilty, ladies and gentlemen, even by his own admission, of the lesser offense."

7

The defense closing argument began by highlighting issues with the victim's credibility. Comings emphasized that the victim told Lestelle she tried to stop defendant from leaving the house, and that defendant "seemed very sincere" in his statement to Detective Tutwiler because he admitted he was mad and that he pushed the victim. However, defendant "said the reason why he pushed her. She's trying to stop him from leaving." Comings then returned to the topic of the victim's credibility because her story had changed dramatically. He asserted that there was no reason to think defendant was lying and that defendant's story was plausible. More specifically, Comings asked, "Why isn't it plausible that . . . [defendant] pushed [the victim] to stop her from coming at [him] so he could get away from her[?]" The defense closing ended with a reminder that the victim had admitted inuring herself in the past "to try to get [defendant] in trouble."

Matusik began her closing argument in rebuttal with the following statement: "So that's the defense story, the defendant just pushes her, shoves her, and leaves, and that's it. And she—what? Inflicts all of these injuries to herself." Although Matusik admitted the victim told Lestelle defendant had only pushed her, she asked the jury to infer the victim said this only because she and defendant had jointly concocted a story in an effort to have the case against him dismissed. Matusik concluded by stating "the defense story is completely unreasonable and implausible."

B.     *The Jury Instructions*

Matusik, Comings, and the trial court had a preliminary discussion about jury instructions before the close of the People's evidence. It was agreed that the jury would be instructed on the lesser included offense of simple battery on a cohabitant. (§ 243,

8

subd. (e)(1).)  Consequently, the court received CALCRIM No. 841, which pertains to this lesser included offense.  The instruction indicated the People needed to prove that the battery, if one occurred, was not an act of self-defense, but only if the jury was being instructed on self-defense.  (CALCRIM No. 841.)  In reference to CALCRIM No. 841, the trial court stated:  "I'm going to put a question about self-defense because I haven't heard anything about self-defense.  If there's a question that he did it, but he did it in self-defense, we might bring that in."  When the trial court expressed the view that defendant was not requesting a self-defense instruction, Comings responded, "Well, there's no—I mean, unless you're going to allow me to have it based on his statement."  The following exchange then occurred:

"The Court:  It has to be evidence that says, Yes, I did it.  An admission that I did it, but I did it in self-defense.

"Mr. Comings:  Well, it's some evidence.

"The Court:  What I've heard so far is, I didn't hit her.  I didn't do it, okay.  The most he can have is push to get off—to get out.  That's it.

"Mr. Comings:  He—he said that he used—he pushed off based on her coming at him.  It's in the—

"The Court:  Yeah.  He pushed her.  That's not saying I admitted I hit her and then I—and committed a felony in self-defense.

"Mr. Comings:  That's true.

"The Court:  The charge is a felony.  [¶] . . . [¶]

"Mr. Comings:  I know the charge.

9

"The Court: People can—you want to respond to that, the request for self-defense?

"Ms. Matusik: I think at this point I would object based on the evidence that's been presented. If the defendant testifies or if Mr. Comings was able to elicit something from the victim that would point to self-defense, that would be a different story.

"The Court: All right. At this point, I don't see any evidence that says I did it, but I did it in self-defense, okay.

"Mr. Comings: Okay.

"The Court: The defense, if I understand it correctly, is, I didn't do it. I didn't hit her, okay.

"Ms. Matusik: Yeah. She already had the injuries.

"The Court: That's right.

"Ms. Matusik: I mean, that's the defense.

"The Court: Right. The injuries were there. I didn't do it. All right. Anyway, I'll put a question mark because we're not finished yet. And at the end, I'll come back to all of these."

When the court and counsel returned to the topic of jury instructions, the court indicated it "was going to take out self-defense" with respect to CALCRIM No. 840, which applies to the charged offense of battery on a cohabitant causing traumatic condition (§ 273.5, subd. (a)). When the court asked Comings if he wanted to "put [anything] on the record regarding that," counsel replied simply, "No." Matusik then reminded the court that "we need to take the self-defense out of simple battery as well."

10

The trial court responded it would "take out item 3, the self-defense issue." When the court asked Comings if he had any objections to the simple battery instruction, he again responded, "No."

The jury received CALCRIM Nos. 840 and 841. As modified by the trial court, neither instruction made any mention of self-defense. To find defendant guilty of battery causing traumatic condition (§ 273.5, subd. (a)), the jury needed to find that he willfully and unlawfully inflicted an injury on his former cohabitant, and that the injury resulted in traumatic condition. The only things the jury had to find true before it could convict defendant of simple battery (§ 243, subdivision (e)(1)) were that defendant "willfully and unlawfully touched [the victim] in a harmful or offensive manner," and that the victim is a person with whom defendant had previously cohabited or had a dating relationship.

ANALYSIS

Defendant argues, among other things, that the trial court erred in declining to instruct the jury regarding self-defense. More specifically, he contends the elimination of any element of self-defense from the jury instruction on the lesser included offense of simple battery had the effect of turning that offense into a strict liability one because the jury could not consider whether defendant's pushing the victim to get away was a justifiable reaction to her grabbing him to stop him from leaving the house. We reject this attempt to blame the lack of a required jury instruction on the trial court because, as we explain, *ante*, Comings invited the error about which defendant now complains. However, we agree with defendant that his trial attorney provided inadequate assistance of counsel by failing to insist on a self-defense instruction, at least with respect to the

11

lesser included misdemeanor count. Comings failed to remind the trial court that the lesser included offense existed, and he did so at a critical juncture. Because this error was prejudicial, we reverse the judgment of conviction for simple battery. As new proceedings upon remand render moot defendant's claims regarding prosecutorial misconduct and other acts of alleged ineffective assistance by Comings, we issue no opinion on those matters.

1. The Trial Court Did Not Err In Failing To Instruct The Jury Regarding Self-Defense

If substantial evidence supports an affirmative defense, a criminal defendant has a right to have the jury instructed regarding that defense. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*Ibid.*)

Defendant argues the trial court erred in declining to instruct the jury regarding self-defense. In this case, however, we need not decide whether the trial court erred in failing to give a self-defense instruction because, even if it did, defendant invited the error. (See *People v. Cooper* (1991) 53 Cal.3d 771, 827 (*Cooper*).)

"The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal." (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1234.) A reviewing

12

court may invoke the invited error doctrine when the record discloses that defense counsel made a tactical decision to acquiesce in the failure to give an instruction. (See *People v. Hardy* (1992) 2 Cal.4th 86, 184-185 (*Hardy*) [no explicit objection to an instruction on lesser included offenses is required, and a tactical purpose may be inferred from counsel's decision to remain silent during a discussion indicating that no instruction will be given due to strategy of counsel for codefendant].) "The question . . . is whether the attorney's conduct went beyond a mere failure to object and constituted an invitation to the court." (*People v. Graham* (1969) 71 Cal.2d 303, 319, overruled on other grounds in *People v. Ray* (1975) 14 Cal.3d 20, 29, fn. 7, 32.)

The touchstone of this analysis is that counsel acted "intentionally" rather than out of "ignorance or mistake." (*Cooper*, *supra*, 53 Cal.3d at p. 830-831.) Therefore, a tactical decision that is based on a misunderstanding of the law may still support application of the invited error doctrine on appeal. (*Ibid.*; *People v. Duncan* (1991) 53 Cal.3d 955, 970 (*Duncan*) [citing *Cooper* for the proposition that invited error applies even if counsel's trial strategy is "based on a misunderstanding of the law"].) "Error is invited if counsel made a conscious tactical choice. A claim that the tactical choice was uninformed or otherwise incompetent must, like any such claim, be treated as one of ineffective assistance of counsel." (*Cooper*, at p. 831; see also *Duncan*, at p. 970 ["The legal theory for complaining about counsel's misunderstanding of the law is ineffectiveness of counsel, not invited error. To hold otherwise puts a trial court in the position of being a guarantor of counsel's tactics: if the tactical decision to request omission of lesser included offenses turns out to have been unknowledgeable, the error

should be charged to counsel, not the trial court"].)  Although a trial court may inquire of a defendant personally whether he or she waives the giving of a jury instruction, it need not so inquire, and a reviewing court may invoke the invited error doctrine based solely on the conduct of defense counsel.  (*Cooper*, at p. 828.)

The record in this case discloses that Comings made a tactical decision not to insist on a self-defense instruction.  When the trial court first broached the topic of self-defense, Comings implied it probably did not apply.  The trial court asked if defendant was requesting a self-defense instruction, and Comings stated, "Well, there's no—I mean, unless you're going to allow me to have it based on his statement."  After the court said defendant could not obtain a self-defense instruction unless defendant admitted he had committed a felony and reminded Comings that "[t]he charge is a felony," counsel responded simply with, "I know the charge."  The court and Matusik jointly characterized the defense theory as a combination of arguments that defendant did not hit the victim and that her injuries were preexisting.  Matusik even concluded, "I mean, that's the defense."  After saying he knew defendant faced a felony charge, Comings made no statements during this initial exchange about self-defense.  At no point did he indicate defendant's theory of the case involved anything other than what Matusik and the trial court had mentioned.  When the court again asked Comings about self-defense as it was finalizing the jury instructions, he declined an explicit invitation to "put [anything] on the record regarding that."

As in *Hardy*, Comings participated in a conversation with Matusik and the trial court about the giving of the instruction he now demands on appeal.  (*Hardy*, *supra*, 2

14

Cal.4th at pp. 184-185.) He initially expressed reluctance to argue for self-defense at all and then agreed that, "The charge is a felony." In addition, Comings did nothing to correct the trial court and Matusik when they characterized the defense strategy as involving claims that defendant did not hit the victim and that her injuries were preexisting, but not that he had a reasonable, defensive reason for pushing her. This means he, like the defense attorney in *Hardy*, stood silently by during a discussion about the defense theory of the case. (*Id*. at pp. 184-185.) He therefore implied he agreed with Matusik and the court that his theory was the same as what had been discussed.

For these reasons, we conclude Comings's decision not to advocate for a self-defense instruction was a tactical strategy rather than an act of random mistake. "As a result, [defendant] waived [his] right to have the trial court deliver such [an] instruction[] to the jury." (*Hardy*, *supra*, 2 Cal.4th at p. 185.)

2.     Defendant's Trial Counsel Rendered Ineffective Assistance In Connection With the Self-Defense Instruction

As the California Supreme Court stated in *Cooper* and *Duncan*, the remedy possessed by a defendant whose attack on the trial court's failure to instruct is barred by the invited error doctrine because the defense attorney's tactical decision was the basis of a misunderstanding of the law is to seek reversal based on counsel's ineffectiveness at trial. (*Cooper*, *supra*, 53 Cal.3d at p. 831; see also *Duncan*, *supra*, 53 Cal.3d at p. 970.) Consequently, we now consider whether defendant's trial counsel provided ineffective assistance in connection with self-defense instructions.

15

"To prevail [on an ineffective assistance of counsel claim], defendant would have to prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Cooper*, *supra*, 53 Cal.3d at pp. 831-832, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 & *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) When reviewing ineffective assistance claims, we employ a "strong presumption" that counsel's performance was adequate. (*Strickland*, at pp. 689-690; *People v. Leonard* (2014) 228 Cal.App.4th 465, 484.) We also view the actions of counsel in the context of the facts available to him or her at the time rather than in hindsight. (*Strickland*, at p. 689; *In re Valdez* (2010) 49 Cal.4th 715, 729-730.) " '[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

We are aware that "[t]actical errors are generally not deemed reversible." (*People v. Hart* (1999) 20 Cal.4th 546, 623.) Although we found, *ante*, that Comings had a "tactical" reason for not demanding a self-defense instruction with respect to the misdemeanor simple battery charge, we reiterate that, in the context of the invited error doctrine, "tactical" means "intentional." (*Cooper*, *supra*, 53 Cal.3d at p. 830-831.) Otherwise, the Supreme Court's invitation to address arguments about the failure to

16

demand a jury instruction on ineffective assistance grounds when counsel has invited the alleged error would be meaningless.

In addition, the rule that tactical errors will "generally" not lead to reversal does not mean they never can. In this case, we find no satisfactory explanation for Comings's failure to call the court's attention to the lesser included misdemeanor offense when discussing jury instructions, or to point out that his theory involved more than a denial that defendant had struck the victim, or that her injuries predated the events of the night in question. Consequently, we find the unique facts of this case fall within the small subset of cases in which a tactical error is so profound as to justify reversing the judgment.

Of course, Comings cannot have rendered ineffective assistance in failing to demand a self-defense instruction if no such instruction was required. We therefore turn to that issue now.

A jury instruction on an affirmative defense is appropriate "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case." (*People v. Sedeno* (1974) 10 Cal.3d 703, 716, italics added, overruled on other grounds by *People v. Breverman* (1998) 19 Cal.4th 142, 157, 172-179.)

Here, defendant told Detective Tutwiler he had not hit the victim but had only pushed her to escape because she grabbed his arms as he was trying to leave. Even the victim agreed with this version of events in her statement to Lestelle. Although the

victim testified at trial that this statement was a lie, she also testified defendant never told her what to say to Lestelle. This admission makes the victim's statement to Lestelle particularly significant, because a reasonable jury could conclude the coincidence between the two sides of the story indicates the victim's statement to Lestelle was the most truthful version of events she had related to anyone.

The People contend no substantial evidence supports a self-defense instruction because "the nature of the charges" was that defendant had repeatedly hit the victim, not that he had merely pushed her. We note the indictment provided no such details and instead alleged defendant "did willfully and unlawfully inflict a corporal injury resulting in a traumatic condition upon [the victim]." Although Matusik vigorously argued for a conviction on the felony offense, she also told the jury in closing arguments that "[t]he slightest touching, if done in an insolent, rude, or angry manner, is sufficient" to sustain a simple battery conviction. According to Matusik, "it really doesn't take much to be guilty of this offense." In fact, she told the jury on two occasions that defendant had admitted he was guilty of simple battery because he admitted he had pushed the victim. Even if the People only intended to seek punishment for the acts of striking the victim with defendant's hands and laptop computer, the statements Matusik made to the jury were not limited in this way and invited a conviction upon proof of even a push.

Substantial evidence supports a self-defense instruction for the reasons stated *ante*. The question, then, is whether a self-defense theory is inconsistent with the defense asserted at trial. We conclude it is not, at least with respect to the lesser included simple battery charge.

18

In his opening statement, Comings told the jury defendant had "pushe[d the victim] away to get away like a normal person would." This is in essence a self-defense argument, because it asserts defendant used minimum force to resist an unlawful touching by the victim. "[A]n offensive touching, although it inflicts no bodily harm, may nonetheless constitute a battery, which the victim is privileged to resist with such force as is reasonable under the circumstances." (*People v. Myers* (1998) 61 Cal.App.4th 328, 335 (*Myers*).) Even Matusik's opening statement acknowledged defendant's version of the incident was that the victim had tried to prevent him from leaving. She asked the jury to discredit this explanation because the victim's injuries were not consistent with a simple push. During the presentation of evidence to the jury, the victim testified she told Lestelle defendant had not hit her but had pushed her when she tried to block his exit. Moreover, the jury actually heard defendant's recorded statement to Detective Tutwiler. Finally, both closing arguments mentioned defendant's assertion the victim's injuries resulted from being pushed, but not hit. Therefore, a self-defense theory as to the misdemeanor charge was not only not inconsistent with defendant's trial strategy, but consistent with arguments and evidence presented to the jury throughout trial.

The People object to defendant's attempts to separate self-defense as it applies to the felony charge from self-defense as it applies to the misdemeanor charge. They assert the elements of the two offenses are identical except for the extent of injury caused. We agree, but only in part. As reflected in the jury instructions the court administered, a conviction for battery on a cohabitant causing traumatic condition (§ 273.5, subd. (a)) requires proof that, "The defendant willfully and unlawfully inflicted a physical injury on

19

his former cohabitant," coupled with proof that, "The injury inflicted by the defendant resulted in a traumatic condition." (CALCRIM No. 840.) Similarly, in order to sustain the charge of simple battery on a cohabitant the People needed to prove that, "The defendant willfully and unlawfully touched [the victim] in a harmful or offensive manner," and that, "[the victim] is the former cohabitant or a person with whom the defendant currently has, or previously had, a dating relationship." (CALCRIM No. 841.) Each offense therefore requires proof of a battery by defendant, but the felony charge requires proof of injury that qualifies as traumatic while the misdemeanor charge does not.

Where we part ways with the People is the way in which self-defense interacts with each of these sets of instructions. The *Myers* case is instructive in this regard. There, a confrontation occurred between the defendant and the manager of the defendant's apartment complex. (*Myers*, *supra*, 61 Cal.App.4th at p. 331.) The manager asserted the defendant must have punched him without saying a word, but he did not recall specific events due to memory loss. (*Ibid.*) The manager suffered a serious brain injury. (*Id.* at pp. 331-332.) A prosecution expert concluded the injuries had been caused by a punch, while a defense expert could not tell if they resulted from a punch or from falling after being pushed. (*Id.* at p. 333.) The defendant alleged the manager had angrily poked him in the chest, causing the defendant to push the manager, who then slipped on wet pavement. (*Id.* at p. 332.) The trial court gave a jury instruction that said the defendant could only successfully argue self-defense if he reasonably believed "that bodily injury is about to be inflicted upon him." (*Id.* at p. 333.) The prosecutor argued

20

the defendant had no right of self-defense because a poke did not pose a risk of serious bodily injury, and the trial court agreed. (*Id.* at p. 334.) The jury acquitted the defendant of assault with intent to cause great bodily injury (§ 245, subd. (a)(1)); it convicted the defendant of simple assault as a lesser included offense of the foregoing, and also convicted him of battery causing serious bodily injury. (*Id.* at pp. 330, 335.)

The reviewing court reversed the judgment. (*Myers*, *supra*, 61 Cal.App.4th at p. 336.) Because the least offensive touching can constitute a battery, the court held a person subjected to even minor physical contact has a privilege to use reasonable force to resist the battery. (*Id.* at p. 335.) "To hold otherwise would lead to the ludicrous result of a person not being able to lawfully resist or defend against a continuing assault or battery, such as the act [the] defendant alleged here." (*Ibid.*, fn. omitted.) Because the jury did not convict the defendant of assault with intent to cause great bodily injury, the court found it "evidently concluded that [the defendant] had pushed rather than punched [the manager]." (*Id.* at p. 335.)

Similar reasoning applies here. Since defendant could only use the amount of force that was reasonably necessary to stop the victim from grabbing his arms as he attempted to leave (*Myers*, *supra*, 61 Cal.App.4th at p. 335), it would indeed be difficult to see how he could be acting in lawful self-defense if he had actually hit the victim with either his fists or his computer. If, however, the victim sustained her injuries because defendant pushed her to get away, his actions may have been a reasonable response to her uninvited physical contact.

21

By insisting defendant's theory at trial was inconsistent with self-defense because he refused to admit hitting the victim, the People, like the trial court and Comings, disregarded the existence of the misdemeanor lesser included offense. As explained in *Myers*, a push can be a reasonable defensive reaction to a minimal battery by the victim even though a punch may not be. Conversely, a push can be a simple battery even if it would less likely be a battery causing traumatic condition because injuries of that magnitude flow more expectedly from a strike with a fist or a hard object such as a laptop computer. Because the admitted push was sufficient to constitute a simple battery if it was unlawful because it was not in self-defense, and because defendant's statement to Detective Tutwiler presented substantial evidence that the push was a defensive reaction to the victim's attempt to stop defendant, defendant was entitled to an instruction on self-defense at least with respect to the simple battery charge. Due to the acquittal on the felony, we need not also decide whether self-defense was appropriate as to that charge.

We attribute the lack of a self-defense instruction to counsel's ineffective assistance. The California Supreme Court has "deem[ed] it appropriate to emphasize that the duty of counsel to a criminal defendant includes careful preparation of and request for all instructions which in his judgment are necessary to explain all of the legal theories upon which his defense rests." (*People v. Sedeno*, *supra*, 10 Cal.3d at p. 717, fn. 7.) As discussed, *ante*, Comings essentially argued self-defense by asserting defendant pushed the victim away from him "like a normal person would." What he failed to do was remind the trial court that defendant faced not only a felony charge, but also a lesser included misdemeanor. By acquiescing in the idea that defendant had to admit he had

22

committed a felony in order to be allowed to argue self-defense, counsel breached his duty to request instructions reflecting all aspects of the case against defendant.

Comings also stood idly by while Matusik and the trial court mischaracterized the defense theory as involving nothing but a denial that any hitting occurred and an accusation that the victim's injuries were preexisting. While defendant denied hitting the victim, he admitted pushing her. Had Comings called the misdemeanor offense to the court's attention and explained why that meant defendant did not need to admit he had committed a felony in order to be found guilty, defendant's admission would have meant he satisfied the condition the trial court placed on his ability to obtain a self-defense instruction. Instead, Comings remained silent and invited the error of which defendant now complains.

Comings's representation of defendant was ineffective for the reasons we have now stated. We therefore turn to whether this defect prejudiced defendant.

As the People contend, the jury could have acquitted defendant of the felony but convicted him of the misdemeanor because it believed he injured the victim but found her injuries were insufficiently traumatic. However, and as in *Myers*, the jury also could have discredited the victim's version of events and convicted defendant of the simple battery charge only because it knew he pushed the victim and could not consider whether he did so in self-defense. Several unique factors about this case make the latter explanation especially likely.

First, because the trial court struck all self-defense language from the jury instruction regarding the simple battery offense, Matusik was able to tell the jury

23

defendant had admitted guilt of this crime. Due to the absence of a self-defense instruction, Comings had no rebuttal to the People's closing argument that defendant was "definitely guilty, ladies and gentlemen, even by his own admission, of the lesser offense."

Second, the victim in this case had not only recanted, but also told Lestelle that her statement to Officer Zuetel was a lie. She then testified at trial that her statement to Lestelle was a lie. A reasonable jury might conclude that the victim was lying at trial but telling the truth when she spoke to Lestelle. The similarity between the version of events recounted to Lestelle and the version defendant gave to Detective Tutwiler, coupled with the victim's testimony that defendant did not tell her what to say, makes this conclusion more likely than it would otherwise be.

Finally, the victim admitted telling Lestelle she had previously injured herself and blamed it on defendant to get him in trouble. Unlike the other things she told Lestelle, the victim never claimed this statement was a lie. In his closing argument, Comings told the jury this was "the most telling thing that she said to the [Lestelle]." If the jury believed the victim had herself caused her facial bruising and that she had sustained the scraping to her arms and legs while working on her car, as defendant indicated to Detective Tutwiler, it could reasonably have found not that her injuries were not traumatic, but that defendant had not caused them. Simple battery requires no proof of actual injury. (CALCRM No. 841.) Consequently, the jury could have thought defendant caused no injury to the victim but still convicted him of simple battery.

In each of these ways, the absence of a self-defense instruction sufficiently "undermine[s] confidence in the outcome." (*Cooper*, *supra*, 53 Cal.3d at pp. 831-832.) The arguments of the People to the contrary are unpersuasive for the reasons we next discuss.

The People argue no reasonable jury could have found defendant reasonably believed he was in imminent danger from the victim because his prior acts of domestic violence showed a tendency to express anger at the victim with physical violence. This contention assumes a fact the jury did not need to find true, because, as discussed, *ante*, it did not need to find defendant engaged in violent behavior, either in the past or on the night of the incident giving rise to the instant prosecution, in order to convict him of simple battery.

Next, the People assert defendant could not invoke the self-defense doctrine because this affirmative defense is unavailable to a defendant who initiates a physical assault and fails to communicate that the assault has been abandoned. (See, e.g., *People v. Booker* (2011) 51 Cal.4th 141, 182.) This argument also hinges on an unsupported premise. According to the People, "the evidence was uncontroverted that [defendant] initiated the physical assault when he confronted [the victim] in the bedroom and struck her in the face with his hand. [Citation.] It was likewise uncontroverted that [defendant] continued this attack in the kitchen when he struck [the victim] several more times in the face, all before he ever left the house. [Citation.]" The record belies this assertion. Defendant told Detective Tutwiler he never struck the victim, but only pushed her. What

25

is more, the victim told the same story to Lestelle. Therefore, the People did not necessarily prove, let alone undisputedly so, that defendant initiated any attack at all.

For the foregoing reasons, we find trial counsel's failure to account for the misdemeanor offense and demand a self-defense instruction in connection thereto was prejudicially ineffective. We therefore reverse the judgment and remand for new proceedings not inconsistent with this opinion. These proceedings render moot defendant's remaining claims of ineffective assistance, as well as his contention that the prosecutor committed multiple acts of misconduct in the trial that already occurred.

### DISPOSITION

The judgment is reversed. We remand for further proceedings not inconsistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

MILLER_____
J.

CODRINGTON_____
J.

26