Filed 8/16/22 P. v. Boyd CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076899 |
| v. | (Super.Ct.No. INF1601599) |
| WAYNE ERIC BOYD, | OPINION |
| Defendant and Appellant. | |

Appeal from the Superior Court of Riverside. Otis Sterling III, Judge. Affirmed.

Trenton C. Packer for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

In 2016, V.N. moved into the home of defendant and appellant Wayne Eric Boyd after agreeing to work as his personal assistant. V.N. alleged that during the course of that relationship, defendant became psychologically, physically, and sexually abusive.

When V.N. finally reported her allegations to law enforcement, defendant was charged with numerous offenses, including assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 1); penetration by a foreign object (§ 289, subd. (a)(1), count 2); assault with the intent to commit rape, sodomy, or oral copulation (§ 220, count 3); false imprisonment (§ 236, count 4); assault with a deadly weapon (§ 245, subd. (a)(1), count 5); making criminal threats (§ 422, count 6); and misdemeanor sexual battery (§ 243.4(e)(1), count 7). Defendant was also charged with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 8) and misdemeanor solicitation of prostitution (§ 647(b), count 9), arising out of an incident involving one of V.N.'s friends, B.C. Ultimately, defendant was sentenced to a term of two years in state prison after a jury convicted defendant on counts 3, 6, and 7, as well as the lesser included offenses of assault (§ 240) on counts 2 and 8.[1]

---

[1] The trial court dismissed count 9 prior to the submission of the case to the jury, and the jury acquitted defendant on counts 1, 4, and 5.

2

Defendant appeals, arguing that his conviction must be reversed because (1) expert testimony presented at trial should have been excluded because the prosecutor failed to timely disclose the anticipated testimony in violation of section 1054.1 et seq. and (2) various acts of alleged prosecutorial misconduct deprived him of a fair trial. We conclude that all of defendant's claims have been forfeited for failure to raise timely objections during the trial court proceedings. We further conclude that, even in the absence of forfeiture, defendant has not shown prejudice warranting reversal as the result of any delayed discovery and has not established any act of misconduct on the part of the prosecutor. As a result, we affirm the judgment.

## II. BACKGROUND

A. *Allegations and Charges*

According to V.N., she moved into defendant's home after agreeing to work as his personal assistant sometime in 2016. V.N. alleged that their relationship soon became psychologically, physically, and sexually abusive.

Specifically, V.N. alleged that when she was living with defendant, he would repeatedly come into her room, uninvited, and act in a sexually aggressive manner, despite her requests for him to stop, including exposing himself to her, climbing on top of her, forcefully kissing her, and putting his fingers in her vagina. On two occasions, defendant purportedly whipped V.N. with a horse whip in order to force her to dance naked for him. On two other occasions, defendant purportedly confined V.N. in a caged area used for dogs in order to discipline her. As a result of these allegations, defendant was charged with one count of penetration of V.N. by a foreign object (§ 289,

3

subd. (a)(1), count 2); one count of false imprisonment (§ 236, count 4); and one count of assault with a deadly weapon (§ 245, subd. (a)(1), count 5).

V.N. also claimed that when she tried to leave defendant in August 2016, he became angry, threw a glass at her, threw her to the ground, and kicked her repeatedly in the chest. As a result of this allegation, defendant was charged with one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 1), with a special allegation that he inflicted great bodily injury in the commission of the offense (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)).

V.N. produced two recordings from her mobile phone, which were taken around the Labor Day weekend of 2016. In both recordings, defendant was depicted making verbal statements threatening to inflict physical harm on V.N. As a result of these recordings, defendant was charged with one count of making criminal threats. (§ 422, count 6).

V.N. and a friend, B.C., alleged that on September 10, 2016, they had plans to attend a concert together. While they were getting ready, defendant approached V.N., made complimentary comments about V.N.'s appearance, put his hands into V.N.'s shorts and inserted his fingers into her vagina. Both V.N. and B.C. told defendant to stop. Defendant also repeatedly attempted to grope V.N., reaching under her bra to touch her breasts. As the women were preparing to leave, defendant became upset with them. When B.C. tried to get into her vehicle, defendant pulled her out of the vehicle, threw her to the ground, and began hitting B.C. repeatedly. B.C. managed to get out from under defendant, and the two women eventually drove to the hospital to seek medical attention.

4

As a result of this incident, defendant was charged with (1) one count of assault with the intent to commit rape, sodomy, or oral copulation (§ 220, count 3); (2) and one count of misdemeanor sexual battery (§ 243.4, count 7), arising out of his actions towards V.N. Defendant was also charged with one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 8), arising out of his actions towards B.C.

B. *Trial, Verdict, and Sentencing*[2]

Defendant's trial involved 12 days of witness testimony presented over the course of three weeks. Both V.N. and B.C. testified regarding the allegations upon which the charges against defendant were based. Additionally, the prosecution presented the testimony of the deputy from the Riverside County Sheriff's Department who personally interviewed V.N., B.C., and defendant regarding the allegations. The deputy's testimony included general descriptions of the interview tactics taught to law enforcement regarding how to conduct interviews with potential suspects and victims, known as BATI.[3] Finally, defendant testified in his own defense and presented the testimony of various relatives and acquaintances who purported to have personal knowledge of the relationship between defendant and V.N.

---

[2] Because defendant has not challenged the sufficiency of the evidence to support his convictions on appeal, we provide only a general summary of the testimony received at trial.

[3] Behavior Analysis and Interrogation Techniques.

5

The jury convicted defendant on counts 3, 6, and 7, as well as on the lesser included offenses of assault (§ 240) on counts 2 and 8. As a result, defendant was sentenced to a term of two years in state prison.

## III.  DISCUSSION

A. *Delayed Disclosure of Expert Testimony*

On appeal, defendant contends that reversal is required because the prosecution was permitted to present expert testimony that was not disclosed in compliance with section 1054.1 et seq. Specifically, defendant contends that the deputy's testimony regarding BATI should have been, but was not, disclosed prior to trial. We conclude this claim has been forfeited for failure to make a timely objection in the trial court proceedings and further conclude that, even in the absence of forfeiture, defendant has failed to establish prejudice warranting reversal.

1. <u>Relevant Background</u>

A Riverside County Sheriff's Department deputy testified that he had over 21 years of experience as a sworn peace officer and currently worked both as a patrol officer and field training officer. During the course of his involvement in this case, the deputy personally interviewed B.C., V.N., and defendant.

The deputy initially testified regarding his observations during the course of his interviews with B.C., V.N., and defendant. Defendant participated in an initial recorded interview with the deputy and provided an additional recorded statement after the conclusion of the interview. After defendant's recorded interview was played for the jury, the prosecutor asked the deputy to describe the training he had received related to

6

interviewing potential suspects and witnesses. The deputy stated that he had received both introductory and advanced courses in BATI, which assists law enforcement in identifying an interviewee's body language, demeanor, and vocabulary to help determine how an interview should be conducted.

The deputy described how his BATI training led him to take a "passive" approach when conducting defendant's interview and identified various examples of his passive approach in his interview with defendant. The deputy explained that defendant's initial interview concluded because defendant requested to stop the interview and obtain counsel. However, defendant requested to resume his recorded interview "within a minute" of his request to stop. The deputy testified that, in his experience, such situations are "red flag[s]" that typically occur when a sex crime is involved. When asked about his reaction to defendant's request to resume the interview, the deputy explained that such a situation "falls in line" with his experience investigating sexual assault crimes in which a suspect "f[inds] out or . . . process[es] that they've given too much information . . . [and] they'll go back on the record to either soften or mitigate their involvement . . . ."

The recording of defendant's subsequent statement was then played for the jury. When the recording concluded, the prosecutor asked the deputy whether he identified any key words or phrases that stood out to him during the interview. In response, the deputy offered his opinion that "the statement in itself is [defendant's] way of explaining the sexual allegation." At that point, defense counsel objected to the line of questioning, stating, "Relevance. Comes to conclusion. Form an opinion." The trial court sustained the objection, and the prosecutor requested a side bar.

7

Outside the presence of the jury, the trial court explained that it was not inclined to permit the deputy to express any opinions regarding which witnesses the deputy found credible. In response, the prosecutor requested the trial court to hold a hearing pursuant to Evidence Code section 402 to determine the extent the deputy would be allowed to testify on the topic. During the evidentiary hearing, the deputy identified various aspects of defendant's statements that stood out to him because they suggested defendant wanted to portray himself as dominant while also attempting to soften or distance himself from the specific allegations.

Defense counsel was also given an opportunity to cross-examine the deputy regarding these opinions during the hearing. During this cross-examination, defense counsel began to inquire whether the deputy's expertise would extend to interviews with complaining witnesses, and whether the deputy could similarly identify characteristics that might suggest untruthfulness during his interviews with B.C. and V.N.

At the conclusion of the hearing, the trial court ruled that the deputy could generally testify about his training and experience; things that his training and experience have led him to look for when conducting interviews; and what he would typically expect to see during interviews with witnesses in this situation. However, the trial court prohibited any opinions specific to the facts of the case or any testimony specifically identifying any BATI factors as present in the interviews of any witnesses. The trial court specifically expressed the view that the attorneys could argue whether the factors were present in their arguments before the jury, but the deputy could not offer such opinions. Defense counsel did not lodge any objections to the court's ruling.

8

When the deputy's testimony before the jury resumed, the prosecutor elicited general testimony explaining the concept of "minimizing" and "softening," as well as phrases that might suggest these motives. The deputy's general testimony on this topic consisted of only four pages in the reporter's transcript. On cross-examination, defense counsel inquired further regarding the deputy's BATI training and asked him to provide additional information regarding how that training applied to interviews with complaining witnesses. Defense counsel then specifically elicited testimony regarding the deputy's application of his BATI training to his interviews with B.C. and V.N., asking the deputy to identify what characteristics he would look for when interviewing a complaining witness, as well as his impressions of both B.C. and V.N. On redirect, the deputy was asked to elaborate on the techniques used to question complaining witnesses.

On appeal, defendant now argues that it was error to permit that testimony because it constituted expert testimony of (1) interrogation techniques designed to detect a suspect's attempts to minimize acts of sexual abuse, and (2) patterns of disclosure by sexual abuse victims. According to defendant, such testimony could not have been presented absent pretrial disclosure in compliance with section 1054.1 et seq. As we explain below, defendant's claim has been forfeited and, further, does not warrant reversal even in the absence of forfeiture.

2. General Legal Principles and Standard of Review

" '[I]n criminal proceedings, under the reciprocal discovery provisions of section 1054 et seq., all court-ordered discovery is governed exclusively by—and is barred except as provided by—[section 1054 et seq.]' " (*People v. Thompson* (2016) 1 Cal.5th

9

1043, 1101-1102.) "Under section 1054.1, prosecutors are required to disclose any exculpatory evidence and any relevant written or recorded statements of witnesses or reports of the statements of witnesses whom they intend to call at trial." (*People v. Morrison* (2004) 34 Cal.4th 698, 713; § 1054.1, subd. (f).) This court has previously held that the statutory requirement is broad enough to encompass disclosure of the substance of an intended expert's testimony, even if no formal written report has been made. (*People v. Hughes* (2020) 50 Cal.App.5th 257, 280.)

" 'A violation of . . . section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836." (*People v. Anderson* (2018) 5 Cal.5th 372, 396.) Thus, "[t]o prevail on a claim alleging a violation of discovery statutes, an appellant must show there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 467; *People v. Thompson*, *supra*, 1 Cal.5th at p. 1103 [" 'It is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm.' "].)

### 3. Forfeiture

The California Supreme Court has been abundantly clear that the failure to raise a timely objection forfeits any claim of error premised upon a violation of section 1054.1. (*People v. Anderson*, *supra*, 5 Cal.5th at p. 395 [defendant forfeits claim that prosecutor did not provide timely discovery by failing to object]; *People v. Morrison*, *supra*, 34 Cal.4th at p. 714 [When allegations of discovery violations are "based on information

10

that was known or available to [defendant] at trial[;] . . . [defendant's] failure to make proper objections, request appropriate sanctions, or seek any continuance on the matter is fatal . . . on appeal."].) Here, the record shows that defense counsel never objected to the deputy's testimony on the basis that it constituted undisclosed expert testimony in violation of section 1054.1. Nor did defense counsel request a continuance to obtain evidence to meet any purportedly undisclosed expert opinion. Accordingly, any claim of error based upon an alleged violation of the reciprocal discovery statutes has been forfeited.

In his reply brief, defendant does not dispute the fact that he failed to object or request a continuance based on any purported violation of section 1054.1 et seq. Instead, he argues we should excuse any such failure because an objection would have been futile, as any prejudice could not be remedied "save for an immediate mistrial." This assertion is simply unsupported by the record. Notably, the trial court held an evidentiary hearing pursuant to Evidence Code section 402 before any of the challenged testimony was ever presented to the jury. The hearing involved a full disclosure of the deputy's intended testimony as well as an opportunity for defense counsel to cross-examine the deputy. Had defendant objected based upon a discovery violation at any time during this hearing, the trial court could have easily issued an order excluding the testimony in its entirety before it was every presented to the jury.[4] Additionally, the presentation of evidence did

---

[4] Indeed, as the People correctly point out, the trial court expressed that it would have excluded such testimony, had an objection been timely raised when ruling on defendant's motion for a new trial.

11

not conclude until nearly two weeks after the evidentiary hearing.**5** Thus, had defendant timely objected, the trial court could have also deferred the cross-examination of the deputy on this topic until the end of trial to permit defendant sufficient time to prepare for cross-examination or consult a defense expert for rebuttal.**6**

We also conclude that, to the extent defendant now complains of the deputy's testimony regarding "sexual abuse victims' pattern of disclosure of assault allegations," the doctrine of invited error would preclude defendant from relying on this testimony as a basis for reversal. "[T]he doctrine of invited error will operate to preclude a defendant from gaining reversal on appeal because of such an error made by the trial court at the defendant's behest." (*People v. Duncan* (1991) 53 Cal.3d 955, 969.) The doctrine has been specifically applied to claims regarding the improper admission of expert testimony. (*People v. Williams* (2009) 170 Cal.App.4th 587, 620 [A detective's allegedly improper opinion that he suspected defendant was in possession of a firearm and drugs was elicited by defense counsel on cross-examination and therefore invited error.]; *People v. Steele* (2002) 27 Cal.4th 1230, 1247-1248 ["Once the defense elicited [the expert's] opinion on cross-examination . . . , the prosecution was entitled to elicit on redirect examination" further opinion on that subject.].)

---

**5** The evidentiary hearing was held on August 8, 2019, and the last witness to testify in this case did so on August 21, 2019.

**6** Even if defendant required more than two weeks to consult with a competing expert, the trial court also expressed that it would have granted a continuance for this purpose had defendant made such a request.

Here, both at the time of the evidentiary hearing pursuant to Evidence Code section 402 and on direct examination, the prosecutor elicited testimony only regarding the application of BATI tactics to the examination of potential suspects. With respect to the deputy's testimony regarding "disclosure patterns of sexual assault victims," it was defense counsel who first elicited such opinions on cross-examination. Having done so, defendant cannot now complain of the prosecutor's follow up questions on that topic during redirect examination. (*People v. Steele* (2002) 27 Cal.4th 1230, 1247-1248 [" 'It is well settled that when a witness is questioned on cross-examination as to matters relevant to the subject of direct examination but not elicited on that examination, he may be examined on redirect as to such new matter.' "].) Notably, all of the testimony defendant now claims was improperly admitted on this issue occurred during the prosecutor's redirect examination of the deputy. Thus, in addition to forfeiture, the doctrine of invited error precludes defendant from relying on this testimony as a basis for reversal on appeal.[7]

4. Defendant Has Not Shown Prejudice Even Absent Forfeiture

While we agree that the prosecution should have disclosed the intent to elicit an expert opinion from the deputy in the course of pretrial discovery, even in the absence of forfeiture, we would conclude there is no basis for reversal based upon the delayed disclosure of the deputy's testimony on the topic of BATI.

---

[7] If anything, defense counsel's questions to the deputy regarding disclosure patterns of victims of sexual abuse appear to be a violation of the court's instructions following the Evidence Code section 402 hearing to limit the deputy's testimony regarding interviewing techniques and responses.

13

First, as our Supreme Court has explained, " '[I]t is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm.' " (*People v. Thompson*, *supra*, 1 Cal.5th at p. 1103; *People v. Jenkins* (2000) 22 Cal.4th 900, 950.) Thus, the failure to request a continuance is itself a factor that "demonstrate[s] a clear lack of prejudice to the defense" (*People v. Taylor* (2001) 26 Cal.4th 1155, 1182), and such a failure is considered fatal to any claim of error based upon untimely disclosure in violation of section 1054.1 et seq. (*People v. Thompson*, *supra*, 1 Cal.5th at p. 1103 ["The omission [of a request for continuance] is fatal to [defendant's] contention on appeal."]; *People v. Morrison*, *supra*, 34 Cal. 4th at p. 714 [Failure to "seek any continuance on the matter is fatal" to a claim based on violation of section 1054.1.]; *People v. Arias* (1996) 13 Cal.4th 92, 151-152 [In the absence of a request for continuance, "a claim that any surprise enhanced the damaging effect of [the witnesses] testimony is speculative."].)[8] Here, in the absence of a request for continuance, defendant simply cannot meet his burden to show prejudice resulting from any delayed disclosure.

Second, defendant fails to explain how his defense strategy might have changed, had he been notified of the deputy's testimony earlier. (*People v. McKinnon* (2011)

---

[8] Such a conclusion arises from the fact that the purpose of a continuance is to "allow defendant to develop a response." (*People v. Carrera* (1989) 49 Cal.3d 291, 334; *People v. Hughes*, *supra*, 50 Cal.App.5th at p. 281 [appropriate remedy in response to surprise disclosure of evidence would be to continue the trial to permit defendant to prepare a response to the evidence].) Thus, the failure to request a continuance strongly suggests that at the time of the disclosure, defense counsel either did not believe the evidence was consequential enough to require a response or that the defense was already sufficiently prepared to respond despite the delayed disclosure.

14

52 Cal.4th 610, 668-669 [To establish prejudice, the defendant must show "that his defense would have been different had he been provided timely discovery of evidence."]; *People v. Thompson*, *supra*, 1 Cal.5th at p. 1103 [no prejudice where defendant "fails to assert how earlier disclosure . . . would have made any difference to her defense strategy"].) On appeal, defendant suggests, in a conclusory manner, that earlier disclosure would have afforded him time to hire his own expert or better prepare for cross-examination. However, neither of these arguments are persuasive.

Because the trial court precluded any opinions specific to the facts of the case, the deputy's actual testimony on direct examination regarding BATI consisted of only a general explanation that law enforcement officers are trained to identify the BATI concepts of "softening," "distancing," "dominating," and "minimizing." A competing expert would not be able to deny the fact that the deputy received such training, and it is thus unclear what testimony a competing expert would have been able to offer. (*People v. Wilson* (2005) 36 Cal.4th 309, 357 [Where the defendant "fails to show how he could have rebutted or impeached [the witness's] testimony had he received earlier notice, he fails to show prejudice."].) Nor is it even clear that defendant had any incentive to rebut the deputy's generalized testimony, since defense counsel decided to use the deputy's BATI training to defendant's benefit by eliciting testimony regarding the potential markers of untruthfulness in a complaining witness.[9]

---

[9] Thus, this case is unlike that of *People v. Hughes*, *supra*, 50 Cal.App.5th 257, where the undisclosed expert testimony involved a specific opinion on a "critical fact question" based upon an accident reconstruction expert's "technical notes." (*Id.* at

*[footnote continued on next page]*

With respect to better preparation for cross-examination, we observe that defense counsel was given the opportunity to fully explore the deputy's opinions at the time of the evidentiary hearing prior to the deputy's testimony before the jury. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 840 [no continuance necessary to allow for preparation of cross-examination where defense counsel "had the opportunity to interview [the witness] shortly before [the] witness's testimony regarding the anticipated scope of his testimony"].) The deputy's testimony on resumed direct examination regarding BATI tactics was generalized and relatively short, representing less than five pages in the reporter's transcript. Thus, the nature of the testimony does not suggest that a significant amount of preparation would have been needed for effective cross-examination. Additionally, as we have already observed, defense counsel could have requested to defer cross-examination of the deputy until later in the trial, had counsel truly believed more preparation for cross-examination was needed. (*People v. Verdugo* (2010) 50 Cal.4th 263, 283 [opportunity to re-call witness for further cross-examination would cure harm from delayed disclosure of testimony].)

Given this record, we are unpersuaded by defendant's otherwise speculative assertions that disclosure of the deputy's testimony at an earlier time would have led to the retention of a rebuttal expert or better preparation for cross-examination. In the absence of a request for continuance or any showing of prejudice, defendant has not

---

pp. 279-280, 283.) Given this clear factual distinction, we find defendant's reliance on that case inapposite.

16

shown that the delayed disclosure of the deputy's testimony on the topic of BATI was prejudicial, even if defendant had preserved the claim for appeal.

B. *Prosecutorial Misconduct*

Defendant also contends on appeal that reversal is required because repeated instances of prosecutorial misconduct deprived him of a fair trial. Specifically, defendant contends the prosecutor repeatedly elicited inadmissible character evidence, improperly vouched for the credibility of a witness, and improperly accused defense counsel of fabricating evidence. These claims have been forfeited for failure to object in the trial court proceedings. Additionally, as we explain, even in the absence of forfeiture, the record does not support defendant's claims that the prosecutor's actions constituted misconduct.

1. General Legal Principles and Standard of Review

"A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the *federal* Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 965.) "Under California law, to establish reversible prosecutorial misconduct a defendant must show that the prosecutor used ' "deceptive or reprehensible methods" ' and that it is reasonably probable that, without such misconduct, an outcome more favorable to the defendant would have resulted." (*People v. Caro* (2019) 7 Cal.5th 463, 510.) The defendant's burden is lower under state law because reversible misconduct can be established " 'even

17

when those actions do not result in a fundamentally unfair trial.' " (*Lopez*, *supra*, at p. 965.)

2. Forfeiture

It is well established that "[t]o preserve a claim of prosecutorial misconduct for appeal, a defendant must object and request an admonition." (*People v. Caro*, *supra*, 7 Cal.5th at p. 510; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1329; *People v. Lopez*, *supra*, 42 Cal.4th at p. 966.) In the context of claims of prosecutorial misconduct, the requirement that a timely objection be made is not merely technical because the "failure to object prevent[s] the prosecution from developing the record to refute these claims and prevent[s] the trial court from taking steps to avoid or remedy any prejudice." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 426-427.)

Here, as the People correctly note, defendant did not object or request an admonition in the trial court proceedings in response to any of the alleged acts of misconduct he now identifies on appeal. In reply, defendant does not dispute the fact that he failed to object or request an admonition with respect to any of the conduct he now claims constitute prosecutorial misconduct. Accordingly, all of defendant's claims have been forfeited, and reversal is not warranted. Further, as we explain below, even in the absence of forfeiture, defendant has failed to show that the prosecutor engaged in actions that amount to deceptive or reprehensible methods.

### 3. The Prosecutor Did Not Elicit Improper Character Evidence

Defendant contends the prosecutor engaged in misconduct by intentionally eliciting inadmissible character evidence on five occasions. As we explain, the record does not support a finding that any of these instances constituted misconduct.

First, defendant claims the prosecutor improperly questioned him regarding his romantic relationships with other women. However, during direct examination, defendant sought to explain one of the recordings depicting him making an alleged criminal threat. According to defendant, V.N. instigated the reaction depicted in the recording by insulting a "person in New York [defendant had] known since 2012" who was "dear to [him]" and who was "a special person." On cross-examination, the prosecutor asked defendant to explain the nature of his relationship with this individual. Thus, the record makes clear that the prosecutor's questions on this topic were not an attempt to elicit character evidence but, instead, a proper inquiry into the veracity of defendant's testimony. Given defendant's claim that the actions depicted in the recording were justified as a result of V.N.'s insults against an otherwise unidentified "special person," it was not improper for the prosecutor to inquire as to the nature of defendant's relationship with this person so that the jury could determine whether defendant's actions were, in fact, reasonable under the circumstances.

Second, defendant complains that the prosecutor improperly asked V.N. where defendant's grandsons slept when they visited defendant's home and whether V.N. had ever seen defendant's grandsons smoking marijuana. According to the defendant, these questions were intended to imply that he sexually abused his grandsons and that he also

19

provided his grandsons with illicit drugs. However, defense counsel was the first to ask where defendant's grandsons slept when they visited during cross-examination of V.N., suggesting that the grandsons could be witnesses capable of refuting V.N.'s claims that defendant sexually abused her. Ultimately, both of defendant's grandsons appeared and testified for that very purpose. Given their status as percipient witnesses, where the grandsons slept and whether their observations may have been impaired at the time of any disputed events were valid areas of inquiry. Such questions were directly relevant to the credibility of the grandsons as percipient witnesses and were not improper.

Third, defendant claims the prosecutor improperly elicited testimony that defendant was abusive to animals. In support of this claim, defendant identifies a single instance in which the prosecutor asked how V.N. knew defendant was annoyed at her dog. In response, V.N. stated that defendant verbally expressed annoyance with her dog, "and he would kick [the dog]." The record does not indicate the prosecutor pursued the allegation that defendant kicked V.N.'s dog in any subsequent questioning. The record simply does not support a finding of prosecutorial misconduct. " '[A]lthough it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony . . . , merely eliciting evidence is not misconduct.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) Even assuming for the sake of argument that V.N.'s exceptionally brief statement that defendant kicked her dog constitutes inadmissible character evidence, the prosecutor's question was facially neutral and did not suggest an intent to specifically solicit that testimony. (*People v. Valdez* (2004) 32 Cal.4th 73, 125 [no misconduct where prosecutor's question did not suggest an intent to solicit inadmissible testimony otherwise

offered by witness]; *People v. Tully* (2012) 54 Cal.4th 952, 1039 [prosecutor does not commit misconduct simply because witness references inadmissible testimony in response to an open-ended question].)

Finally, defendant complains that the prosecutor elicited inadmissible testimony in the form of V.N.'s statement that she was not free to leave defendant's property because she did not have a remote control to open the gates.[10] In context, this testimony was not inadmissible character evidence. V.N.'s statement was made in response to a question asking V.N. why she did not immediately seek medical attention after the August 2016 incident in which defendant allegedly repeatedly kicked V.N. Notably, defendant was charged with assault causing great bodily injury based upon this incident. Thus, V.N.'s subjective reasons for failing to seek medical attention immediately after the incident would have been directly relevant to her credibility, as well as the question of whether any injury should be considered "great bodily injury." We see no basis to conclude that this testimony was inadmissible and, as a result, the prosecutor could not have engaged in misconduct by eliciting such testimony. Thus, even in the absence of forfeiture, we would conclude that defendant has failed to show the prosecutor engaged in misconduct by deliberately eliciting inadmissible character evidence.

---

[10] Other testimony established that defendant's property was located in a remote area, surrounded by a six foot tall electric fence, and that an individual would have to walk at least a mile before reaching the nearest neighbor.

4. <u>The Prosecutor Did Not Improperly Vouch for a Witness</u>

Defendant also claims the prosecutor engaged in misconduct by improperly vouching for the credibility of V.N. as a witness. As relevant to this claim, V.N. referenced the fact, during cross-examination, that defense counsel previously worked as a sexual assault counselor. Defense counsel acknowledged this remark in closing argument, stating that V.N. "must have researched me" and further argued that V.N.'s testimony was not credible due to V.N.'s hostile attitude during cross-examination. In rebuttal, the prosecutor argued that V.N.'s demeanor was reasonable given V.N.'s apparent belief that defense counsel used to work as a sexual assault counselor. According to defendant, this rebuttal argument constituted improper vouching. We disagree.

"Although a prosecutor may not personally vouch for the credibility of a witness, a prosecutor may properly argue a witness is telling the truth based on the circumstances of the case." (*People v. Boyette* (2002) 29 Cal.4th 381, 433.) Thus, " 'so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," [the prosecutor's] comments cannot be characterized as improper vouching.' " (*People v. Ward* (2005) 36 Cal.4th 186, 215; *People v. Bonilla* (2007) 41 Cal.4th 313, 337.)

The prosecutor's argument in this case simply cannot be construed as improper vouching for V.N.'s credibility. The prosecutor did not reference any personal knowledge or personal beliefs to claim that V.N. was truthful. Instead, the prosecutor

22

referenced V.N.'s subjective belief that defense counsel had previously worked as a sexual assault counselor. Regardless of whether V.N.'s belief was accurate, her subjective belief on this point was properly before the jury, having been elicited by defense counsel during cross-examination. Thus, it was permissible for the prosecutor to ask the jury to consider V.N.'s subjective belief when weighing the reasonableness of V.N.'s responses and demeanor as a witness. Doing so does not constitute improper vouching for V.N.'s credibility.

5. <u>The Prosecutor Did Not Improperly Demean Defense Counsel</u>

Finally, defendant complains the prosecutor improperly accused defense counsel of fabricating evidence. Specifically, defendant complains that the prosecutor used the word "scripted" on several occasions during closing argument to describe the testimony of various defense witnesses. According to defendant, the use of the word "scripted" constituted an improper accusation that defense counsel fabricated evidence. Again, we disagree.

Generally, it is "improper for the prosecutor to imply that defense counsel has fabricated evidence or otherwise to portray defense counsel as the villain in the case." (*People v. Sandoval* (1992) 4 Cal.4th 155, 183.) However, " '[h]arsh and colorful attacks on the credibility of opposing witnesses . . . are permissible. . . . Thus, counsel is free to remind the jurors [or] . . . allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent "lie." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 442.)

Notably, on almost all of the occasions in which the prosecutor used the term "scripted," the term was used solely to describe the testimony of a witness without any reference to defense counsel. Merely arguing that a witness's testimony was not credible because it appeared "scripted" is not misconduct.

Further, in the single instance in which the prosecutor used the term "scripted" in conjunction with a reference to defense counsel, the prosecutor remarked that defendant, three of the defense witnesses who testified at trial, and one of the defense attorneys had all been staying at defendant's home together. This fact was clearly before the jury, as defendant testified to it on direct examination. This was not misconduct, as it is not improper for a prosecutor to suggest that a witness's testimony has been coached so long as there is evidence in the record to permit such an inference. (*People v. Thomas* (1992) 2 Cal.4th 489, 537; *People v. Mason* (1960) 184 Cal.App.2d 317, 363-364; *People v. Valencia* (2008) 43 Cal.4th 268, 283-284 [prosecutor's argument that defense witnesses met with defense counsel and that the witnesses "must have been coached" does not constitute misconduct, but "come[s] within [the] wide range of permissible argument"].) Thus, even this single statement would not constitute misconduct, as the prosecutor's reference to defense counsel referred to specific testimony in the record that would permit such an inference.

6. Defendant Has Not Established a Violation of Due Process

Finally, defendant argues that even if the alleged prosecutorial misconduct can be deemed harmless when viewed in isolation, the cumulative effect of the numerous instances of prosecutorial misconduct resulted in a denial of due process requiring

24

reversal. However, as we have already explained, the record does not support a finding of prosecutorial misconduct based on any of the matters defendant complains of on appeal. Because none of the prosecutorial actions defendant complains of can properly be considered misconduct, they could not have collectively resulted in a denial of due process.

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.

25