Filed 3/2/23  P. v. Armijo CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL RAY ARMIJO,<br><br>    Defendant and Appellant. | G060073<br><br>(Super. Ct. No. 19WF2758)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed as modified.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

In 1993, appellant Michael Ray Armijo kidnapped two victims at gunpoint for several hours, during which time he robbed both victims and attempted to rape one of them. He was at large for decades before DNA testing linked him to the crimes in 2020. By then, appellant could not be charged with simple kidnapping because the statute of limitations for that offense had already expired. And he could not be charged with kidnapping for rape because that offense did not become a crime in California until 1997. However, appellant was charged with, and convicted of, two counts of kidnapping for robbery, with attendant gun-use enhancements. (Pen. Code, §§ 209, subd. (b), 12022.5, subd. (a).)[1] The trial court sentenced him to prison for seven years to life, plus five years, on each count.

Appellant now contends: 1) There is insufficient evidence to support his convictions because he kidnapped the victims for purposes of rape, not robbery; 2) the trial court mishandled his request for jury instructions on the time-barred offense of simple kidnapping; 3) he is entitled to additional presentence conduct credit; and 4) the record must be corrected to accurately reflect the trial court's sentencing decision. As respondent concedes, appellant's latter two claims have merit. Therefore, we will modify the judgment with respect to appellant's presentence credits and other aspects of his sentence. Otherwise, we affirm.

## FACTS

On the night of April 4, 1993, Kim G. and Frank V. went to Newport Beach for a dinner date. When they returned to Kim's apartment complex in Stanton, Frank parked on the street, and they talked and kissed in the backseat of his car until around 2:00 a.m. At that time, appellant knocked on their window and identified himself as a police officer. He was holding a gun and claimed to be investigating prostitution activity

---

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

2

in the area. Because he looked official and was using police jargon, Kim and Frank believed his false assertion that he was a police officer.

Appellant got in the backseat of their car and ordered Frank to get in the driver's seat. While holding the gun on Kim, he directed Frank to drive to a deserted location about five minutes away. Once there, appellant searched the car for weapons and took a screwdriver from the glove box. Then he had Frank drive to a nearby alley and stop the car. Claiming he needed to examine Kim, appellant ordered Frank out of the car and told him to wait outside. He also warned Frank that Kim would get hurt if he tried to interfere or run away.

Once Frank was well away from the car, appellant put his hand down Kim's pants and inserted his finger into her vagina. Then he took out his erect penis and told her to "suck it." When she refused, he forced her head down to his crotch and pressed his penis against her mouth, but she still refused his demand. Appellant then tried to rape and sodomize her. The rape attempt failed, and as soon as he inserted his penis into Kim's anus, she pulled away because of the pain, so he gave up and told her to get dressed.

After calling Frank back to the car, appellant took his cigarettes. Then he demanded Frank and Kim's wallets, and they turned them over. The wallets not only contained cash, they also contained the victims' address information on their driver's licenses. Appellant threatened to use that information to track them down and kill them if they ever reported him to the police.

Appellant then got in the driver's seat of the car, and with Frank in the front passenger seat and Kim in the back, he proceeded to drive around Orange and Los Angeles County for several hours. During the drive, appellant apologized for assaulting Kim. He also related he was born in Pittsburgh, his parents had committed suicide, and he had previously been convicted of murder, none of which was true.

3

The ordeal finally ended around 7:00 a.m., when appellant dropped off Frank and Kim near Kim's apartment complex. The weary victims flagged down a police officer who happened to be in the area and told him they had been kidnapped. As part of the ensuring investigation, Kim underwent a sexual assault examination during which her genital area was swabbed for potential DNA evidence. The police also found Frank's abandoned car about half a mile away from Kim's apartment complex. Besides an empty wallet, the only thing of note in the vehicle was $1,000 in cash that Frank had hidden under a floormat the day before the kidnapping.

Over a quarter century passed before appellant was implicated in the incident. Acting on a tip, investigators obtained a sample of his DNA and linked him to sperm cells that were recovered from Kim's rectal area during her examination. A DNA expert testified those cells came from a single source, and the odds of them belonging to someone other than appellant were about a trillion to one.

At trial, appellant testified he met Kim one night in 1993 after his band finished playing a gig at a bar in Orange County. First, they were flirting and kissing at a table inside the bar. Then they went out to the parking lot and began making out and "grinding" in the backseat of Kim's car. As they were going at it, Frank drove up and confronted appellant with a pistol. He told appellant to "run or die," and appellant chose flight. After scurrying out of the parking lot on foot, he took a bus to Washington state, where he was living at the time. On the witness stand, appellant denied kidnapping Kim or Frank, claiming he was the victim, not them.

DISCUSSION

*Sufficiency of the Evidence*

Appellant admits there is sufficient evidence to prove he committed the uncharged offense of kidnapping for rape. However, he contends there is insufficient evidence to prove he committed the charged offense of kidnapping for robbery. We disagree.

4

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence of the defendant's guilt. (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) In so doing, "[w]e presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*Ibid.*) "'The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]'" (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

In challenging the sufficiency of the evidence to support his convictions for kidnapping for robbery, appellant focuses on the fact that offense required the prosecution to prove he had the specific intent to commit a robbery *at the time the kidnapping began.* (*People v. Davis* (2005) 36 Cal.4th 510, 565; *People v. Tribble* (1971) 4 Cal.3d 826, 832.) He claims the record shows he intended to commit rape, not robbery, when he initially kidnapped Frank and Kim. And although he did commit robbery during the course of the kidnapping, he did do as a mere "afterthought," after his sexual ambitions went unfulfilled.

The first problem with this argument is that it assumes appellant could only entertain one intent at a time. This, of course, is fallacious. He could have entertained more than one intent, and the evidence suggests that was the case.

One of the first things appellant did during the kidnapping was to search the victims' car for weapons. With gun in hand, he took a screwdriver from the glovebox so

5

the victims could not use it against him during the kidnapping. This strategic move constituted a robbery because it amounted to a taking of another's property by force or fear. (§ 211.) Because that taking occurred at the beginning of the kidnapping, it suggests it was part of appellant's plan from the outset. (Compare *In re Dennis* (1975) 46 Cal.App.3d 50, 55 [finding insufficient evidence of kidnapping for robbery where defendant passed on several opportunities to take the victim's belongings during the early phase of the kidnapping]; *In re Alvarado* (1972) 27 Cal.App.3d 610, 613 [same where the evidence clearly established and the prosecutor readily admitted the defendant's objective for the kidnapping was rape, not robbery].)

Appellant didn't just take the screwdriver, however. After the sexual assault, he demanded the victims' wallets and told them he would track them down through their driver's licenses and kill them if they ever reported him to the police. While it is *possible* this robbery scare tactic popped into appellant's mind for the first time after the sexual assault, the jury could reasonably find it was part and parcel of his original kidnapping plan. After all, it is not uncommon for criminals to plan in advance how they intend to escape and avoid police detection after they carry out, or attempt to carry out, their criminal objectives.

In that regard, it is also significant that appellant made off with Frank's car at the end of the kidnapping. Appellant's need for a getaway vehicle is not something that is likely to have escaped his attention until that late juncture. Rather, it seems entirely plausible he had that on his mind when he initially confronted Frank and Kim in the vehicle. While there is no direct evidence of this, it strikes us as a logical inference the jury could reasonably draw from the circumstances presented. (See *People v. Ferrell* (1990) 218 Cal.App.3d 828, 834 [jurors are fully entitled to rely on circumstantial evidence in discerning the issue of criminal intent].)

As proof he was not out to rob the victims, appellant cites the fact there was still money in Frank's car when the police found it after the kidnapping. However, the

6

money was stashed in a hidden location underneath one of the floormats, so we cannot read too much into this fact. All things considered, we are satisfied the record contains substantial evidence to support appellant's convictions. Although plausible, it is simply not likely that he took the victims' belongings on a spur-of-the moment whim during the course of the kidnapping. Because the circumstances reasonably support the conclusion the takings were baked into appellant's plan to kidnap the victims and sexually assault Kim, we reject his challenge to the sufficiency of the evidence.

*Instructional Claim*

Appellant also argues the trial court mishandled his request for instructions on the lesser included offense of simple kidnapping. We are not persuaded.

During the initial conference on jury instructions, defense counsel indicated he was interested in having the trial court instruct the jury on simple kidnapping as a lesser included offense of kidnapping for robbery. He also alluded to the fact the statute of limitations for that lesser offense had expired. The court said it would look into that issue before deciding which instructions to give.

The following week, the court revisited the issue by asking defense counsel if he still wanted instructions on simple kidnapping. Defense counsel replied, "Actually, no, Your Honor. After speaking with my client, we're not going to be requesting the lesser." The judge then stated, "Then I'll consider the research I did [on the issue] just for my own benefit." That elicited an apology from defense counsel, but the judge said he was perfectly happy to have done the research for his own edification because he had never encountered a situation where a lesser included offense was outside the statute of limitations.

Appellant contends that rather than accepting his attorney's representations about not wanting instructions on simple kidnapping, the trial court should have informed him personally that he had the right to instructions on that offense if he was willing to waive the statute of limitations. For the reasons explained below, we disagree.

7

Although simple kidnapping is a lesser included offense of kidnapping for robbery (*People v. Lewis* (2008) 43 Cal.4th 415, 518), and trial courts generally must instruct on all lesser included offenses supported by substantial evidence (*People v. Barton* (1995) 12 Cal.4th 186, 203), that is not the case for lesser included offenses that are outside the statute of limitations. (*People v. Diedrich* (1982) 31 Cal.3d 263, 283.) Therefore, the trial court did not have a sua sponte duty to instruct the jury on the time-barred crime of simple kidnapping. (*Ibid.*)

Appellant concedes this point. However, relying on *Cowan v. Superior Court* (1996) 14 Cal.4th 367 (*Cowan*), he contends the trial court should have done more to protect his rights. In *Cowan*, our Supreme Court ruled a defendant may waive the statute of limitations for a crime when it is for his benefit, such as obtaining jury instructions on a time-barred lesser offense. (*Id*. at p. 376.) In discussing the procedure for obtaining such a waiver, the court explained that when the trial court considers whether to instruct the jury on a lesser offense, it "should determine whether there may be a problem with the statute of limitations regarding that offense. If so, the court should elicit a waiver of the statute as a condition of . . . giving the instruction. This should be an easy process. The record need merely reflect in some fashion that the defendant is aware that the offense is, or might be, time-barred, and the defendant has waived the statute of limitations." (*Id*. at p. 377.) *Cowan* also stated that when examining the waiver issue on appeal, a reviewing court may presume that a represented defendant had discussed the issue with his or her attorney. (*Id*. at p. 373.)

Appellant contends that under *Cowan*, the trial court should have asked him if he wanted to waive the statute of limitations on simple kidnapping, so as to permit a jury instruction on that offense. That way, the jury would have had a middle-ground option between acquitting him outright and convicting him on the charged offense of kidnapping for robbery. However, defense counsel told the court that, having discussed the issue with appellant, *they* had decided to forego instructions on simple kidnapping.

8

Since the defense waved off those instructions altogether, we cannot fault the trial court for failing to pursue the issue any further. Indeed, the law is well established that a defendant generally cannot complain about the absence of instructions on a lesser included offense that he induced the trial court not to give in the first place (*People v. Duncan* (1991) 53 Cal.3d 955, 969 [discussing the invited error doctrine]) and those inducements are made by counsel.

Appellant attempts to skirt this problem by arguing there was no strategic basis for his attorney to abandon his request for instructions on simple kidnapping. Armed with the benefit of hindsight, appellant insists he would have been better off if the jury had been given the option of convicting on that lesser included offense. However, under appellant's own version of events – the defense he offered – he was not guilty of *any* crime. In fact, he told the jury that Frank pulled a gun on him, not the other way around. This evidence enabled defense counsel to argue for a complete acquittal in closing argument. Since appellant's own testimony supported an all-or-nothing trial strategy, it was not unreasonable for defense counsel to forego instructions on the lesser included offense of simple kidnapping. (*People v. Duncan, supra,* 53 Cal.3d at pp. 969-970; *People v. Lara* (1994) 30 Cal.App.4th 658, 674.) The fact the jury ultimately convicted appellant on the greater offense of kidnaping for robbery is not cause for reversal.

In any event, the record shows defense counsel was well aware of the statute of limitations issue. And in discussing the issue with the court, counsel made it clear he had talked to appellant about pursuing instructions on simple kidnapping but that they ultimately decided against that strategy. While *Cowan* requires a personal waiver from the defendant prior to giving instructions on a time-barred lesser included offense, it does not require the trial court to seek a waiver from a defendant who has relinquished his right to such instructions through his attorney, which is what appellant did in this case.

9

### Conduct Credits

At sentencing, the trial court awarded appellant 451 days of presentence custody credit, but it did not award him any presentence conduct credit. The court also ordered that, pursuant to section 2933.2, appellant would not accrue any conduct credit while serving his prison sentence. Appellant contends the denial of conduct credit was erroneous in both respects, and respondent agrees. We agree.

In determining appellant's entitlement to conduct credits, we look at the law in effect when he committed his crimes in 1993. (*People v. Chism* (2014) 58 Cal.4th 1266, 1366.) At that time, defendants were entitled to receive presentence conduct credit at the rate of two days for every four days spent in confinement. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48, citing former § 4019, subd. (f).) Therefore, based on having served 451 days in custody before sentencing, appellant is entitled to receive 224 days of presentence conduct credit, for a total credit award of 675 days.

He is also entitled to earn conduct credit for good behavior in prison, pursuant to section 2933. Although section 2933.2, the statute on which the trial court relied, renders prisoners convicted of murder ineligible for such credit, appellant was not convicted of that offense, and, as respondent concedes, appellant is not subject to any other conduct credit limitation. Therefore, we will modify the judgment to remove the prohibition against him receiving conduct credit while in prison.

### Correcting the Record

Lastly, there are some loose ends to tie up with respect to the accuracy of the abstract of judgment and the minute order of the trial court's sentencing decision. We proceed on the assumption that appellate courts have the authority to correct errors and omissions in the minutes and the abstract of judgment when those documents differ from the trial court's oral pronouncement of the judgment. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.; *People v. Mitchell* (2001) 26 Cal.4th 181, 186–187.)

Regarding the abstract of judgment, it is undisputed that document fails to reflect the fact the trial court ordered appellant's sentences on the kidnapping for robbery counts to run consecutively to one another. It is also undisputed the abstract of judgment and minute order incorrectly state appellant was ordered to pay a $10,000 parole revocation fine (§ 1202.45), an $80 court security fee (§ 1465.8), and a $60 criminal conviction assessment (Gov. Code, § 70373). Those monetary penalties were not actually imposed, presumably due to the constitutional prohibition against ex post facto punishment. (See *People v. Callejas* (2000) 85 Cal.App.4th 667, 676–678 [criminal defendants may not be subjected to fines and fees that were established following the date of their offense].)

Furthermore, the minute order is incorrect to the extent it reflects appellant was convicted by plea on count 2 and ordered to pay a booking fee to the Orange County Sheriff's Department. We will modify the minute order and the abstract of judgment to correct these undisputed mistakes in the documentary record.

That brings us to the final issue, which centers on the wording of the trial court's sentencing order. On each of the kidnapping for robbery counts, the trial court sentenced appellant to "seven years to life," plus five years for personally using a firearm during that offense, for a total term of "24 years to life." According to appellant, that terminology wrongly implies he was sentenced to a minimum term in prison, when he was actually sentenced to two life terms with a minimum parole eligibility period for each term.

From a practical perspective, we are hard pressed to find fault with the trial court's expression of appellant's sentence because it merely calls attention to the amount of time he must spend in custody as a prerequisite to parole eligibility. Indeed, our Supreme Court has recognized that including the minimum term of imprisonment in an indeterminate life sentence "gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing

11

hearing of the minimum period the defendant will have to serve before becoming eligible for parole." (*People v. Jefferson* (1999) 21 Cal.4th 86, 101, fn. 3.) Nonetheless, appellant's argument is technically correct.

The punishment for kidnapping for robbery is "imprisonment in the state prison for life with the possibility of parole." (§ 209, subd. (b).) There is no sentencing range or minimum term attached to such a sentence. By law, however, every person so sentenced is eligible for parole after serving seven years in custody. (§ 3046, subd. (a).) Thus, the proper way of expressing appellant's sentence on the kidnapping for robbery counts would be life in prison with the possibility of parole after seven years. (*People v. Wong* (2018) 27 Cal.App.5th 972, 977, fn. 4; *People v. Robinson* (2014) 232 Cal.App.4th 69, 72, fn. 3.) We will modify the judgment to so reflect.

DISPOSITION

The judgment is modified to award appellant 224 days of presentence conduct credit, to remove the prohibition against him receiving conduct credit in prison, and to clarify that on counts 1 and 2 he received life sentences with the possibility of parole after seven years.

Consistent with these changes, the abstract of judgment is modified as follows. Box 15 is modified to reflect 224 days of local conduct credit and 675 days of total presentence credit. Box 1 is modified to reflect appellant's sentences on counts 1 and 2 are to be served consecutively. Line 5 is modified to reflect appellant was sentenced to a term of life in prison with the possibility of parole on those counts, with a minimum parole eligibility period of seven years on each count. The checkmark and notations contained on Line 6 are deleted. In Section 9, the $10,000 parole revocation fine, the $80 court security fee, and the $60 criminal conviction assessment are all deleted. On Line 12, the section 2933.2 credit prohibition is deleted, and appellant's prison sentence is modified to reflect he received a total term of 10 years, plus two life

sentences with the possibility of parole, each with a minimum parole eligibility period of seven years.

The trial court's minute order of the sentencing hearing is modified to reflect these changes, as well.  In addition, the minute order is modified to reflect appellant was convicted by jury, not plea, on count 2, and to delete his purported booking fee.

As modified, the judgment is affirmed.  The superior court is directed to prepare an amended minute order reflecting these modifications.  It shall also prepare a corrected abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

13